## JOSLYN & HATCH *v.* DAVID J. MERROW, AND HUNTOON & DOW, TRUSTEES.

### *Trustee Process.   Contingent claims, &c.*

Where H. & D. by an express provision in their contract with Railroad Co., authorized the corporation "to retain in their hands, for the payment of the work-"men, such an amount of the monthly estimates, as the engineer may deem "proper for that purpose, and the engineer is authorized to adopt such measures "for the disbursement of the money as he may consider judicious"—*It was held*, that under this provision, the parties would be bound by any act of the engineer in retaining and disbursing the money in payment of the laborers on the road, and H. & D. could enforce no claim against the company on the contract, except for the balance due, after sufficient had been retained by the engineer for the above purpose; and the money so retained, would not be the property of H. & D., nor be subject to be taken upon their debts, as it would be in the hands of the company or engineer, as trustee for the laborers:

And where H. & D. sub-let a portion of their work to M., and by their contract M. was "to be under the same liabilities, obligations and restrictions in every "particular in regard to said work, that H. &. D. were under by their contract "with the company"—Under this provision, *it was held*, that whatever liabilities rested upon H. & D. on their contract, were assumed by M.; and as the company had the right as against H. & D. to retain the amount due the laborers, and pay the same to them, the same right existed in favor of H. & D. against M.; and

XXV.   13

that after the engineer had given directions to retain the money for payment of the laborers, M. could only recover the balance of H. & D. after those claims had been satisfied; and as the plaintiffs, by the service of the process, are subrogated only to the rights of M., they cannot hold, under the process, the money thus reserved; and though the payments were thus made to the laborers after the service of the process, still they are good as against the plaintiffs, as M. never had any claim to that money which he could enforce against H. & D.

And it was also held, that for the labor actually bestowed by M. in performance of the contract, which was unpaid, and of which H. & D. have availed themselves, in showing a performance of their contract with the company, they are responsible to M. at least for what the labor was worth to them; and though in the performance of the work, all the provisions of their special contract may not have been complied with by M., and though some uncertainty may exist as to the amount due M. thereon, still the claim is not of that contingent character, that exempts it from the operation of the Trustee act.

TRUSTEE PROCESS. The principal debtor was defaulted, April Term, 1849. The writ was served upon the trustees, March 19th, 1849. The trustees, in answer to interrogatories proposed by the plaintiffs, disclosed, that said Huntoon & Dow, on or about the 26th day of December, 1847, entered into a contract with the Rutland and Burlington Railroad Co., to do the grading and masonry on sections six and seven of the Rutland division of said company's railroad; and that by the terms of said contract, the said grading and masonry was to be completed on or before the first day of April, 1849. And for a failure to make and complete said grading and masonry within the time fixed for its completion, the engineer shall assess such damage as he may think just and reasonable, and charge said party with the amount thereof; or the said engineer may employ other help to hasten the completion of the work within the said specified time, and the expense of such help shall be paid by the said party of the first part, (Huntoon & Dow.) Or in case it should appear to said engineer, that the work has not progressed with sufficient rapidity, he shall have power to determine that this contract has been abandoned, and in the event of such determination, this agreement, on the part of said corporation, shall become null and void, and any balance of money due shall be forfeited to said corporation; and the said engineer shall have power to contract with any person or persons instead of the said party of the first part, &c.

And the said party of the first part, (Huntoon & Dow,) shall

Joslyn & Hatch *v.* Merrow and Trustees.

not let or transfer this contract, or any part thereof, or sub-let any part of the work, to any person or persons, without the consent of the said corporation, &c. In condition of the fulfillment, &c., the said corporation shall and will, for doing and performing the work aforesaid, pay or cause to be paid, &c.

(Here follow the rates to be paid.)

Between the first and tenth of each month, after the commencement of the work, said engineer shall estimate the quantity of work done, and give a certificate of the same; and upon the presentation of said certificate to the treasurer of said corporation, three-fourths of the amount then due for work specified to be paid, &c. *(Provided,* that no estimate shall be made within one month after the commencement of the work, and also that no certificate shall be given for a less sum than five hundred dollars, except at the discretion of the engineer.)

And when the whole of the grading and masonry hereby contracted for, shall have been accepted, agreeably to contract, the balance shall be paid, &c. And the engineer shall be the sole judge of the quality and quantity of all the said work herein specified, and from his decision there shall be no appeal.

And it is hereby further understood and agreed, that the said party of the first part shall pay the laborers in their employ monthly; and if they fail so to do, the said corporation shall have full right and authority to retain in their hands, for the payment of the workmen employed by the party of the first part, on the work hereby contracted for, such an amount of each estimate as the engineer of said corporation may deem proper for that purpose. And the said engineer may adopt such measures for the disbursement of said money as he may consider the most judicious for the interest of all the parties concerned, &c.

The said trustees further disclosed, that on or about the 20th day of January, 1849, they entered into a contract, with said David J. Merrow, which was as follows, and makes a part of this disclosure:

" The said Merrow, on his part, agrees, binds, and obligates him-
" self to the said Huntoon & Dow, to excavate and complete the
" south end of section six, Rutland division, of the Rutland and
" Burlington Railroad, being all of the road south of the large
" borrowing pit on said section; to complete and do the same on

"or before the first day of October, 1849, according to the terms
"and specifications in the contract for doing said work between
"said Huntoon & Dow and R. and B. Railroad Co., as per written
"contract. Likewise to keep a correct account of his laborers' or
"men's time, and furnish the same for inspection, as may be want-
"ed from time to time, at the store. The said Merrow is to be un-
"der the same liabilities, obligations and restrictions in every par-
"ticular in regard to said work, that the said Huntoon & Dow are
"by contract with the Railroad company, to which contract further
"reference is to be had—likewise to commence the work immedi-
"ately, and prosecute it with all diligence.

"The said Huntoon & Dow, on their part, agree to pay said
"Merrow fifteen cents per cubic yard for earth, and thirty cents
"for what is estimated loose rock—payment to be made on or be-
"fore the fifteenth of every month, for work done the previous or
"preceding month from the engineer's estimate; and by the com-
"pletion of the work, according to the contract, the said Huntoon
"& Dow are to pay 5 cents yard earth, and 7 cents yard loose rock,
"additional, on the whole excavated, from the engineer's estimate.

"The said Huntoon & Dow are to have the right of deducting
"out of the monthly estimates or payments, the amount of all the
"goods, &c., &c., the workmen, men, boarding-house keepers, take
"at or of Jones & Dow, up to the amount of each man and board-
"ing-house keeper, due for work or board on said work, likewise
"the right to deduct the shanty rent; the said Merrow to have the
"profits on the goods his men take, the same that Huntoon & Dow
"now have."

And they further disclosed, that on the sixth day of September,
1849, they received a notice from the firm of Jones & Dow, of
Shrewsbury, that said Merrow had sold, assigned and transferred
to the said Jones & Dow the last mentioned contract, together
with all and singular, his, the said Merrow's, rights and interests
accrued, or thereafter to accrue, under and in virtue of said con-
tract, which said notice was given personally by Lucius Dow, ver-
bally, one of the firm of said Jones & Dow. The said Jones &
Dow, from that time forward, did and performed, (as the trustees
understood,) whatever, and all that was ever done after that date,
towards the performance of said last mentioned contract, and al-
ways claimed and still claim that said Huntoon & Dow are account-

able to said Jones & Dow only for all they and the said Merrow, or either of them, have done under said contract. And that said Huntoon & Dow, or either of them, are under no liability, except such as may have arisen under said contract. That at no time prior to said assignment to said Jones & Dow, and notice thereof to said Huntoon & Dow, were said Huntoon & Dow under any absolute indebtedness or liability to the said Merrow, on account of said contract, or because the liability of the said Huntoon & Dow to said Merrow, such as it was, was always contingent, and their indebtedness always depended upon the performance by said Merrow of said contract, agreeably to the terms thereof; and the said Merrow never performed the same, nor has it ever been performed by said Merrow, or by said Jones & Dow; that they failed to make from 6,000 to 8,000 yards of excavation, which was necessary to the completion of said contract, and which said Huntoon & Dow were obliged to make, in order to comply with their said contract with said corporation; and that so much as was ever done by said Merrow and Jones & Dow, was not done by the times stipulated therefor. That the exact amount of work actually done by said Merrow, under said contract, from the time of the service of the trustee process, up to the time of said assignment, the trustees are unable now to state in cubic yards,—think it amounted to from $1,200, to $1,500, exclusive of the five cents for earth, and seven cents "additional" for loose rock, referred to in said contract.— That it was all paid, as well as the work previously done by said Merrow, except said five cents and said seven cents additional, by advancements to the operators on said work, as fast as said work was done; which advancements the said Huntoon & Dow, by understanding with said Merrow, had the right and were under the necessity to make, in order to keep said operators on said work.

That said Jones & Dow have had the control and direction of the work since the assignment to them was made, and the said Merrow has been employed under them.

That said Huntoon & Dow have recently paid to said Jones & Dow the entire balance due on said work, according to the engineer's estimate, exclusive, or not to mention the said five cents for earth, and seven cents for loose rock excavation. That some $90, or over, has been deducted by the engineer of said corporation, on account of said work not having been done, in quality and

quantity, agreeably to the terms of said Merrow's contract, and the same amount has been withheld from said Jones & Dow; said five cents and said seven cents " additional" has never been paid, or any part thereof, to the said Merrow, or to the said Jones & Dow; such additional prices, had the said contract been fully performed by said Merrow, or by his said assignees, would amount to eight or ten hundred dollars, on the entire work; but the said trustees insist that no liability has ever accrued against them therefor, for the reason that there has been no performance of said contract by said Merrow, or his assignees, as before stated. That the entire amount of work done by said Merrow and his assignees, was about $3,000; the exact amount the trustees are not able to state. It was in accordance with the special directions of the chief engineer of said corporation, that advancements and payments were made by the trustees to the laborers upon said work, as aforesaid.

That the monthly estimates were paid by said Huntoon & Dow to said Jones & Dow, from and after said assignment to them, on the sixth day of September, 1849. And June 3d, and August 14th, the engineer gave the directions, in writing, and at other times verbally, for the distribution of the monthly estimates to the laborers. That said Huntoon & Dow have settled with the said corporation for said work.

Upon hearing, in reference to liability of the trustees upon this disclosure, the County Court, at the November Adjourned Term, 1851,—PIERPOINT, J., presiding,—decided and adjudged that the trustees were not chargeable.

Exceptions by plaintiffs.

*S. Fullam, and Stoughton & Baxter* for plaintiffs.

1. We insist that they had no right to pay the workmen after the service of the trustee process.

The contract between them and Merrow gives no such right, and that is the one by which they are bound. Any understanding between them and Merrow to do so, cannot vary the case. The disclosure does not show where or how it was entered into, whether before or after the service of the trustee process. And before they claim the right, under their contract with the corporation, (which we insist they cannot do,) they must show that the

contingencies happened, which would give the corporation the right to retain the funds, for the benefit of the workmen. But Merrow was a sub-contractor on a small portion of the work, and was only responsible on his own contract, which contains no condition to that effect.

2. We also insist that the claim never was contingent. It was to be paid absolutely, on the completion of the work. The work was completed, accepted, and paid for before the disclosure was made, and the five cents for earth, and seven cents for loose rock, "additional," amounting to $800, or $1,000, was then actually in the hands of the trustees. This brings the case within the law established in *Seymour* v. *Cooper & Trustee,* decided in Addison County, the present circuit. *Newell* v. *Ferris & Tr.,* 16 Vt. 135. *Hurlburt* v. *Hicks & Tr.,* 17 Vt. 193. *Spring* v. *Ayer & Tr.,* 23 Vt. 516.

The rule, that the trustee shall be holden, where the principal debtor, at the time of the disclosure, could recover the money by a direct action against the trustee, applies with all its force in this case.

The case shows that the trustees have accepted the work, settled with the corporation, and adjusted the damages for the same, and they are estopped from setting up the non-fulfillment of the contract, within the time specified by the contract.

The five and seven cents "additional" was not therefore a contingent claim at the time of the service of the writ, as it was not then in existence; but it was an absolute debt, for which the trustees were liable to the principal debtor, at the time the disclosure was made.

*Edgerton & Allen* for trustees.

There was nothing due from Huntoon & Dow *absolutely,* to Merrow, upon their contract, at the time of the service of the trustee process. Comp. Stat. Chap. 32, § 7.

But it is conceded that it is not indispensable, in order to sustain the trustee process, that there should be something due *absolutely* from the trustee to the principal debtor, at the time of the service of the writ, that the trustee may be adjudged liable for any sum that may become due *absolutely* from him to the principal debtor previous to disclosure, though nothing was due *absolutely* at the

time of the service of the process; still the disclosure in this case ·shows that there was nothing due absolutely from the trustee to the principal debtor at the time of the disclosure, or at any time , previous. The disclosure shows that the amount of money retained and paid to the workmen, by Huntoon & Dow, exhausted all . the money that became due to Merrow monthly.

The money ·which was to be paid to Merrow upon the completion of the work, according to the terms of the contract, never became due or payable, because the work was not performed according to the contract. *Kettle* v. *Harvey & Tr.*, 21 Vt. 301. *Daily* v. *Jordan*, 2 Cushing, 390, cited in the United States Dig. Vol. .11, p. 449.

The claim for the money, which was to be .paid upon the completion of the contract, was certainly contingent at the time of the service of the trustee process, and therefore not affected by the service of that process. While that contingency existed, the claim ·was assigned; and if the contract was so far fulfilled subsequent to such assignment, that Huntoon & Dow were liable to any extent upon that claim, they were liable only to the assignees. Comp. Stat. Chap. 32, § 7. *Burke* v. *Davis & Tr.*, 13 Vt. 421. *Dennison* v. *Petrie & Tr.*, 18 Vt. 42. *Daily* v. *Jordan*, 2 Cushing, 390.

The opinion of the court was delivered by

ISHAM, J. The plaintiffs, having recovered a judgment against the principal debtor, are also entitled to a judgment against the trustees, if at any time after the service of the trustee process, and before disclosure, any goods or effects of the principal debtor have come into their hands or possession. In other words, if, during that period, there was any indebtedness from Huntoon & Dow to the defendant Merrow, which he could have enforced against them, that indebtedness has been secured to these plaintiffs, by the attachment and service of this process; and to the amount of that indebtedness, and their claim against the principal debtor, the plaintiffs are entitled to recover judgment.

In the investigation of the question whether such indebtedness exists, the case presents two subjects for examination. In the first place, does such indebtedness arise from the monthly estimates, and payments which were to be made by Huntoon & Dow to Merrow? and in the second place, is there such an indebtedness arising

from the contract for the payment of five and seven cents per yard for earth and loose rock excavation, which Huntoon & Dow were to pay Merrow, in addition to the estimate of the engineer? It is insisted, that there is such an indebtedness arising from each of those sources. In relation to the first matter, it appears from the disclosure, that after the service of this process, on the 19th of March, 1849, and before the assignment of the claim by Merrow to Jones & Dow, on the 6th of September, of the same year, the work done by Merrow under that contract with Huntoon & Dow amounted to between 12 and 1500 dollars, exclusive of the additional claim for earth and rock excavation. For this, the trustees, Huntoon & Dow, are indebted to Merrow, and the claim is held by this attachment, unless other facts appear, absolving them from that liability. The liability of Huntoon & Dow on this matter is, however, denied; and it is insisted, that Merrow has no claim therefor, from the consideration, that the whole amount has been paid by Huntoon & Dow to the operatives on the road, under the special direction of the engineer; and that such payment was necessary, to retain the men in their employment, and to ensure the future progress of the work. Whether such payment is a discharge of Huntoon & Dow's liability to Merrow, or not, is the question arising on this part of the case.

If this question had arisen on the contract between the Railroad company and Huntoon & Dow, we think it quite obvious, that such payment by the company to the laborers on the road, would not only be a discharge of their liability to Huntoon & Dow, but the money retained for that purpose under the provisions of their contract, would not be subject to be attached under a process of this character, as a debt due to Huntoon & Dow. By that contract with the company, Huntoon & Dow were to construct sections six and seven of the Rutland division of the road, and by an express provision of that contract, " the corporation were authorized to " retain in their hands for the payment of the workmen, such an " amount of the monthly estimates, as the engineer may deem " proper for that purpose, and the engineer is authorized to adopt " such measures for the disbursement of the money as he may con- " sider judicious." Under this provision, the parties would be bound by any act of the engineer, in retaining and disbursing the money in payment of the laborers on the road; and Huntoon &

Dow could enforce no claims against the company on their contract, except for the balance due, after sufficient had been retained by the engineer for the above purpose. The money so retained would not be the property of Huntoon & Dow, nor be subject to be taken for their debts, as it would be in the hands of the company, or of the engineer, as trustee for the laborers.

The question in this case, however, does not arise on this contract, except so far as it is made, by express reference thereto, a part of the contract between Merrow and Huntoon & Dow. In relation to the contract with Merrow, we find that it was executed on the 20th of January, 1849, "by which Huntoon & Dow sub-"let to Merrow the south end of section six of this road, and Mer-"row agreed to complete the same according to the terms and "specifications in the contract of Huntoon & Dow with the Rail-"road company, and to be under the same *liabilities, obligations* " *and restrictions in every particular in regard to said work,* that " Huntoon & Dow were under by their contract with the compa-"ny;" to which contract reference is made, to ascertain the nature and extent of those liabilities, obligations, and restrictions.— This contract should be construed and enforced so as to carry into effect the evident intention of the parties. When the expression is used, that Merrow is to be under the same liabilities, obligations and restrictions in every particular, in *relation to the work* upon the road, that rested upon Huntoon & Dow, they manifestly referred to the contract, as an entire contract, regulating not only the manner in which the work was to be performed, but the manner in which payment therefor was to be made; so that whatever liabilities and restrictions rested upon Huntoon & Dow on their contract, were assumed by Merrow in his contract with them. Merrow, in relation to that part of the road, was to occupy the same position they occupied, or stand in their shoes, having the same rights against Huntoon & Dow, which Huntoon & Dow had against the company, and subject to the same liabilities to them, which they were under, except so far as express provisions were made in their contract to the contrary. And as the company had the right, as against Huntoon & Dow, to retain the amount due the laborers, and pay the same to them, the same right existed in favor of Huntoon & Dow against Merrow, otherwise he would not be under the same liabilities and restrictions they were under. Thus, when the

money is retained under the express directions of the engineer, it is no more liable to be taken as the property of Merrow under this contract, than it was liable to be taken as the property of Huntoon & Dow on their contract with the company. If Merrow had brought an action against Huntoon & Dow on his contract, for his compensation for labor, Huntoon & Dow would have the right, by an express provision in their contract, to deduct from the amount, the sum due for goods, &c., taken by the workmen, boarding-house keepers, &c., of Jones & Dow, as also all shanty rent, and Merrow could only make a claim for the balance. We can hardly conceive, that Huntoon & Dow would be careful to secure to themselves those claims, by deducting the amount from the monthly estimates, and leave unprovided for that much larger amount, that was to go to the laborers on the road; or obligate themselves to pay to Merrow the whole amount due the laborers, without obtaining that security for the payment of those claims to the operatives, which they had given to the company. Obviously, in such an action by Merrow, after the engineer had given directions to retain the money for payment to the laborers, he could recover of Huntoon & Dow only the balance that should be found due after those claims had been satisfied; and as this was the extent of the claim of Merrow against Huntoon & Dow, no greater right could be secured in favor of these plaintiffs by the attachment and service of this process. By the service of this writ, they are subrogated only to the rights of Merrow; and as he had no claim to the money thus reserved, which he could recover or enforce, it was not a matter that could be taken by these creditors under this process. The legal right to the money was in the company, to be disbursed by the engineer in payment of the claims of the laborers on the road; and as it appears from the facts in this case, that this money was retained and paid to the laborers, under the express direction of the engineer, and that nothing was due Merrow, after those claims were paid, we think the trustees are not chargeable for any sum arising out of that matter; that the payments were good, as against any claim of Merrow; and though they were made after the serving of this process, yet they are good also against these plaintiffs, as Merrow never had any claim for that money, which he could enforce, until after those claims of the laborers had been satisfied.

In relation to the claim of five and seven cents per yard for

earth and loose rock excavation, it is to be observed, that this process was served on the trustees on the 19th of March, 1849, and that this claim was assigned to Jones & Dow on the 6th of September, of the same year. If there was an indebtedness, therefore, from Huntoon & Dow to Merrow on that matter, Jones & Dow took the same, subject to the prior right of these plaintiffs under their attachment. The case shows that these additional prices would amount to over 1000 dollars, if Merrow had fully performed his contract. It is insisted that Huntoon & Dow are not indebted to Merrow on that matter, as the contract was never performed by him according to its provisions; and that if there is a claim, it is of that contingent character, that it is not subject to this process. It appears from the case, that a portion of that excavation of earth and rock was made by Merrow under his contract; and though his work was not entirely finished by him, or by any one under him, nor within the time specified in the contract, yet, for the labor actually bestowed in the performance of that contract, and of which Huntoon & Dow have availed themselves, in showing a performance of their contract with the company, they should be responsible to Merrow, at least for what the labor was actually worth to them. It appears also, from the disclosure, that about 90 dollars has been deducted by the engineer from the claim of Huntoon & Dow, for this non-performance of that contract, and that the same amount has been deducted by Huntoon & Dow, and is retained by them. By this, it would seem that the damages for the non-performance of the contract have been adjusted, not only with Huntoon & Dow, but with the company, so that no further complaint can be made on that ground. However that may be, we think Merrow is entitled to a reasonable compensation at least, for the labor actually performed under that contract, the benefits of which Huntoon & Dow have received.

The contract by Huntoon & Dow was absolute, to pay a given sum for certain work; and though in the performance of that work, all the provisions of their special contract may not have been complied with, and some uncertainty may exist as to the amount due Merrow thereon, yet the claim is not of that contingent character, that exempts it from the operation of the trustee act. Whatever, therefore, the labor of Merrow was worth, in making that earth and rock excavation, and which was expended upon the road be-

fore the assignment to Jones & Dow, is a claim due to him from Huntoon & Dow, and which can be held by these plaintiffs under the service of this process, as being prior in time to that assignment. For this matter we think they should have been held chargeable as trustees. The judgment of the County Court, therefore, discharging the trustees, must be reversed; and the defendants, as trustees, held chargeable for the amount for which they were indebted on this matter at any time before disclosure and before the assignment to Jones & Dow.