LOUIS E. CHESTER *vs.* GEORGE B. McDONALD & trustee.

Suffolk.    November 11, 1903. — February 24, 1904.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, & BRALEY, JJ.

*Trustee Process.    Assignment.    Words,* "Future earnings."

The provision of Pub. Sts. c. 183, § 39, (R. L. c. 189, § 34,) that no assignment of "future earnings" shall be valid against a trustee process unless recorded, does not apply to an assignment of money to be received under a contract for the making and delivery of a chattel which does not require the personal services of the assignor.

The money to be received under a contract for making a granite monument, of a kind which the seller furnishes for the general market cut by his workmen from stone bought of quarrymen, is not earnings within the meaning of Pub. Sts. c. 183, § 39, (R. L. c. 189, § 34,) requiring an assignment of future earnings to be recorded to be valid against a trustee process.

CONTRACT on a promissory note for $173 and interest, begun by a trustee process in which Elmer C. Willison was summoned as trustee. Writ in the Municipal Court of the City of Boston dated September 5, 1901.

The defendant was defaulted, and on June 25, 1902, the trustee

filed an answer showing funds in his hands amounting to $121.38. On June 28, 1902, William Reynolds was admitted as an adverse claimant, claiming the funds in the hands of the trustee by virtue of an assignment.

On appeal to the Superior Court the case was tried before *Bond*, J., without a jury. It appeared, that on July 8, 1901, Reynolds lent the defendant the sum of $375, and received from the defendant a note for that amount and, as collateral security, the assignment above referred to. Reynolds received on account of the assignment, from persons other than Willison, the sum of $150. At the date of the writ there was due to Reynolds from the defendant $225 on account of the note and assignment. The assignment from the defendant to Reynolds never was recorded. It was dated July 8, 1901, and assigned to Reynolds the sums to be received under various orders for monuments, including " E. C. Willison $199 ♯ 23600." " The above to be paid to him until he has amount of note collected in full and then release."

The contract between the defendant and Willison was as follows: " March 9, 1901. Mr. George B. McDonald, Dear Sir, — You will please furnish me with one monument No. 23600, as per scale tracing attached, of the best grade of dark Quincy sound stock, well polished and free from all objectionable spots, knots, or other imperfections, with Lewis holes cut in all pieces requiring same. This work to be heavily boxed and strapped securely with iron, delivered on cars at Quincy, as we may direct, on or before April 20th next, for which we will pay you $185 (one hundred eighty-five dollars). Specifications as below. [Specifications.] Please use Field & Wilde's best dark stock in all pieces of this order to match, have the work first class in every way, and ready for shipment on or before above date. There will be an inscription which will be sent you later on. Yours truly, E. C. Willison."

" Quincy, March 16-01. E. C. Willison. Your order No. 23600, under date of March 9, received and accepted. Yours truly, Geo. B. McDonald."

The judge refused the claimant's requests for rulings, and ruled that the assignment from the defendant to Reynolds was an assignment of future earnings, and that not having been recorded it was invalid against the trustee process, and ordered

judgment for the plaintiff, with costs against the adverse claim-ant, and also that the trustee be charged in the sum of $121.38. The claimant alleged exceptions.

*W. W. Jenness*, (*G. W. Abele* with him,) for the adverse claimant.

*J. T. Keen*, (*J. T. Auerbach* with him,) for the plaintiff.

BRALEY, J.   It appears that the defendant was a maker of granite monuments for mortuary uses, buying the rough mate-rial from quarrymen and then fashioning the stone into the re-quired form at his yard.   No part of the work required to cut the stone into the finished monument was either done by him or especially under his direction, but the labor was performed by his workmen over whom when present he exercised a general superintendence, while in his absence they were under a " work-ing foreman."   It was understood by the buyer that the monu-ment for which he contracted, and that actually furnished, was such as the defendant in the ordinary course of his business pro-cured and made for the general market.   The vendee was in-different as to the person by whom the stone should be worked into the finished design, and the skill and personal services of the defendant were not engaged, and were not the subject of the contract.

The bargain was for the monument itself, and not specifically for the work that was necessary to prepare the stone, and put on the designated letters.   *Bacon* v. *Parker*, 137 Mass. 309, 312.

While the word " earnings " used in St. 1865, c. 43, § 2, sub-sequently Pub. Sts. c. 183, § 39, now R. L. c. 189, § 34, is gener-ally held to embrace wages, it is not to be limited to so narrow a restriction, but is broad enough to include money expended, and material furnished, as well as work to be done, or services rendered, under a contract which calls for both.

No personal services on the part of the defendant were re-quired of, or given by him, or as a matter of legal right could be demanded from him, and this essential element is wanting. *Kendall* v. *Kingsley*, 120 Mass. 94.

The plaintiff relies on the cases of *Jenks* v. *Dyer*, 102 Mass. 235, *Somers* v. *Keliher*, 115 Mass. 165, and *Jason* v. *Antone*, 131 Mass. 534.

In the first case, the evidence apparently was sufficient to show,

that the defendant who kept boarders, did so in the usual way, and that her labor would form a part of the consideration of the contract between her and the trustees, and the case may well rest on this ground.

*Jason* v. *Antone* followed *Jenks* v. *Dyer*, and is somewhat similar as to its facts, and does not require further comment.

The case of *Somers* v. *Keliher* is fully reported, and an examination of the original papers does not disclose further details. But it is significant that the briefs of counsel rest the claim of the plaintiff on the ground of personal services, and the work under the contract might have been found, in part at least, to be the personal labor of Shaughnessy, the assignor.

If, however, these cases are to be considered as supporting the doctrine put forward by the plaintiff, that "future earnings" may be treated as including the price to be paid under any form of contract, that calls for the making or furnishing of a chattel, or the erection of a building that becomes annexed to and is a part of the land on which it is built, and into the making or construction of which no service, by way of manual labor, or of personal supervision, direction and control of the assignor enters, neither can be sustained.

In such a construction, the indispensable requirement of the statute found within the phrase "future earnings," which means payment for what the assignor himself is to earn, whether put as wages, for manual labor, or for personal services actually rendered, is absent. To bring an assignment within its provisions, it must be shown, that under a contract silent as to such details, the consideration to be paid to a contractor includes wages earned, and such as would be due to him, if employed to do the necessary work by the buyer of the finished article of merchandise, or of the owner of land on which the building is to be erected, and by whom in each instance the materials would be furnished, though it might also appear, that, in addition to his own labor, he had expended money for materials and the work of others necessary to be supplied to carry out his agreement.

If the contention of the plaintiff is adopted, then labor and services not contracted for as such, but which are performed by others than the vendor or contractor, as a means of making the chattel to be furnished, or constructing the building, would be-

come as to him personal wages, or earnings, an assignment of which, in order to be valid must be recorded, and the primary object of the statute is defeated.

We are of opinion, that the price to be paid for the monument furnished by the defendant to the trustee, is not "future earnings," an assignment of which must be recorded, in order to be valid against attachment by trustee process, and that the first and second rulings requested by the claimant should have been given.

*Exceptions sustained.*