CHESTER MCFADDEN vs. TOWN OF EAST BRIDGEWATER.

Plymouth.    April 6, 1938. — September 13, 1938.

Present: LUMMUS, QUA, DOLAN, & COX, JJ.

*Health, Board of.    Words, "Wage earner."*

One who owned a cow, sold milk and dairy products, and performed all the work incidental thereto was not a "wage earner" entitled to payments under G. L. (Ter. Ed.) c. 111, § 95, when the board of health caused a discontinuance of his milk business.

CONTRACT.    Writ in the District Court of Brockton dated December 4, 1936.

A report by *Murphy*, J., who found for the defendant, was ordered dismissed by the Appellate Division for the Southern District.    The plaintiff appealed.

*G. L. Wainwright*, for the plaintiff.

*R. E. McCarthy*, (*R. A. Shea* with him,) for the defendant.

QUA, J.    This action is brought under the last sentence of G. L. (Ter. Ed.) c. 111, § 95, to recover $2 for each day during which "the defendant" interfered with the plaintiff following his employment.

The entire section upon which the plaintiff founds his action reads thus:

"If a disease dangerous to the public health breaks out in a town, or if a person is infected or lately has been infected therewith, the board of health shall immediately provide such hospital or place of reception and such nurses and other assistance and necessaries as is judged best for his accommodation and for the safety of the inhabitants, and the same shall be subject to the regulations of the board.    The board may cause any sick or infected person to be removed to such hospital or place, if it can be done without danger to his health; otherwise the house or place in which he remains shall be considered as a hospital, and all persons residing in or in any way connected therewith shall be subject to the regulations of the board, and, if

necessary, persons in the neighborhood may be removed. When the board of health of a town shall deem it necessary, in the interest of the public health, to require a resident wage earner to remain within such house or place or otherwise to interfere with the following of his employment, he shall receive from such town during the period of his restraint compensation to the extent of three fourths of his regular wages; provided, that the amount so received shall not exceed two dollars for each working day."

The decisive facts disclosed by the report, in their aspect most favorable to the plaintiff, are these: The plaintiff, who had been employed for many years as a painter, in July, 1936, was working on a Federal relief project. In addition to that he owned a cow and sold each day from sixteen to eighteen quarts of milk to a few neighbors and some transients. He also sold some cream and butter. The plaintiff himself performed all the work incidental to the keeping of the cow and the sale of these products. The plaintiff had typhoid fever in 1915, was "listed as a carrier of typhoid," and was examined from time to time by a district health officer of the department of public health. In July, 1936, this officer found typhoid fever in a family which was taking milk from the plaintiff and directed the plaintiff not to sell any more milk. On July 13, 1936, a Dr. Bannerman, "representing the board of health of the" defendant, notified the plaintiff's customers not to buy dairy products from the plaintiff, and they ceased to deal with him. The judge found that "the defendant, by its orders, prevented the plaintiff" from continuing to sell milk.

We think it unnecessary to consider whether the plaintiff is barred from recovery by reason of violation on his part of G. L. (Ter. Ed.) c. 94, § 305B, relative to persons engaged in the handling of food, or for other possible reasons, as it seems to us clear that the plaintiff cannot recover under c. 111, § 95, hereinbefore quoted, upon which he rests his case, unless he was a "wage earner" in the "employment" with which the board of health has interfered. There has been no interference with the plaintiff's "employment" on Federal projects or elsewhere. There has been

interference only with the milk business, and the plaintiff was not a "wage earner" in his own milk business, operated solely by himself.  No doubt the words "wages" and "wage earner" may vary widely in meaning according to the context in which they are used, but we see no reason to suppose that "wage earner" in § 95 has any other signification than that commonly attributed to those words both by dictionary definition and by ordinary speech in the community. By that standard they refer to a person who receives pay, generally at short intervals, for labor or services performed for another.  *In re Gurewitz*, 121 Fed. 982.  Apparently the Legislature intended to give relief to a class upon whom it was thought the quarantine and restrictive provisions of the section might impose a peculiar hardship.  A distinction was intended between wage earners and persons who might be affected who were not wage earners.  The reference to "employment" without other words, such as occupation, business, or profession, and the limit of recovery to "two dollars for each working day" tend to confirm this construction.  We do not attempt an exhaustive definition, but we are satisfied that the statute does not help one who has merely lost the profits of a business.  See *Jenks* v. *Dyer*, 102 Mass. 235;  *William Gilligan Co.* v. *Casey*, 205 Mass. 26.

This conclusion is not inconsistent with decisions under the workmen's compensation act as to the "earnings" or earning capacity of a person injured for the purpose of ascertaining the amount of compensation payable to him. *Sensk's Case*, 247 Mass. 232.  *Powers's Case*, 275 Mass. 515.  Compare *Gagnon's Case*, 228 Mass. 334.  The distinction is pointed out in *Federico's Case*, 283 Mass. 430, 432.  See *Chester* v. *McDonald*, 185 Mass. 54.

This decision is not to be extended by implication beyond the points discussed and decided.

*Order dismissing report affirmed.*