### Sherburne Corporation v. Garth Carter, et al.

[340 A.2d 82]

No. 174-74

Present: Barney, C.J., Smith, Keyser, Daley and Larrow, JJ.

Opinion Filed June 3, 1975

*Theodore Corsones, Esq.,* Rutland, for Arthur LaVoice.

*Sullivan & McCaffrey,* Rutland, for First Vermont Bank & Trust Co.

*Smith, Hansen, Carroll & George,* Rutland, for Frank P. Elnicki, Inc.

*Bloomer & Bloomer,* Rutland, for R. N. Johnson.

**Smith, J.** The plaintiff brought an action for interpleader in the Rutland Superior Court seeking guidance as to which of the various creditors of Garth Carter should be paid out of the judgment funds awarded Carter in Carter's action against the plaintiff. The plaintiff had been found liable for breaching construction contracts for work done and materials furnished by Carter in connection with a development of the plaintiff's near Sherburne Mountain. This Court's opinion affirming that adjudication covers the nature and resolution of the original dispute. *Carter* v. *Sherburne Corporation,* 132 Vt. 88, 315 A.2d 870 (1974).

The instant action was necessary because the total amount of the claims presented by Carter's creditors exceeded the funds available. The lower court held hearings in June, 1974, and issued an order distributing the funds in accordance with the priorities it found existed among the creditors. Four of these claimants are now participating in this appeal.

The facts found with respect to these four are as follows. On April 15, 1968, Carter assigned his right to payments from Sherburne that were currently due or that would become due under any contracts for the year 1968 with Sherburne to the Vermont Bank and Trust Company. Notice of this assignment was made to Sherburne on the same day. The bank, now known as the First Vermont Bank and Trust Company, executed a security agreement covering this assignment on April 18, and, on the next day, filed a financing statement with the Office of the Secretary of State. Not until July 9 did the bank also record the financing statement in the city clerk's office in Rutland. Previous to this latter date, both R. N. Johnson and

Frank P. Elnicki, Jr., brought suits against Carter and issued trustee process against the plaintiff. Approximately four years later Arthur LaVoice issued trustee process against the plaintiff.

The trial court ruled that Johnson and Elnicki were entitled to first and second priority, respectively. The bank finished third and only partially recovered on its claim before the available funds were exhausted. No money, of course, remained for LaVoice, who was awarded fourth priority.

Both the bank and LaVoice have appealed from the lower court's judgment. That court's findings and conclusions of law show that it evaluated the assignment from Carter to the bank under two theories; first as if it was an assignment of future earnings under 12 V.S.A. § 3022, and second, that it was recordable as incorporated as a security agreement under the Uniform Commercial Code, Title 9A, Vermont Statutes Annotated. It specifically ruled that the bank's priority over LaVoice was based on the recording of the security agreement in the Rutland city clerk's office.

LaVoice's principal contention on appeal is that it was improper for the lower court to base its decision on Title 9A because the trial was conducted solely on the issue of the applicability of, and compliance with, 12 V.S.A. § 3022 by all parties. This contention is disputed by the bank's brief on appeal, contrary to the court's finding that the bank was "secondarily relying" on Title 9A, and refuted by the fact that the financing statement and security agreement were before the lower court as exhibits. The existence of the Title 9A findings and conclusions, as an issue apart from their correctness, is not error. *Cf. Zaleski* v. *Joyce,* 133 Vt. 150, 333 A.2d 110 (1975).

The bank argues that the trustee processes issued by Johnson and Elnicki could not give them priority because, at the time they were issued, Sherburne's liability to Carter was contingent, Sherburne, in fact, asserting a counterclaim for affirmative relief. No argument is advanced, however, that the processes were issued prior to Sherburne's breach of the contracts with Carter. Subsequent to the breach, Sherburne could be charged as a trustee, since Carter, the principal debtor, had a cause of action against it. *Smith* v. *Stratton,* 56 Vt. 362, 364 (1883). Its obligation was "certain as to the liability, and only

uncertain as to the amount . . . ." *Downer* v. *Topliff*, 19 Vt. 399, 402 (1847). Where there is only uncertainty as to amount, trustee process is available, *Joslyn & Hatch* v. *Merrow and Trustees*, 25 Vt. 185, 196 (1853); 6 Am.Jur.2d *Attachment and Garnishment* § 126, at 650, and is available though the uncertainty is created by a counterclaim. 6 Am.Jur.2d *Attachment and Garnishment* § 128, at 652.

While, as earlier mentioned, the bank disputed LaVoice's contention that the trial court lacked jurisdiction to base its decision on the Uniform Commercial Code, it does challenge the correctness of that aspect of the decision and, in addition, the lower court's resort to 12 V.S.A. § 3022. Because Carter was a resident of Rutland, his assignment had to be recorded in the Rutland city clerk's office if either avenue of approach employed by the trial court was correct. 12 V.S.A. § 3022(1); 9A V.S.A. § 9—401(1)(c). The bank made no such recording until July 9, 1968, but its compliance with 9A V.S.A. § 9—401(c) evidences its belief that it had acquired a security interest. Nevertheless, it argues that the assignment to it was not one of future earnings nor the creator of a security interest under the Code. It would rely, apparently, on the rule that an absolute assignment, not otherwise restricted by an applicable statute, gives it priority over the trustee processes of Johnson and Elnicki because notice of the assignment to Sherburne preceded the service of the trustee processes. *Goodwin* v. *Barre Sav. Bank & Trust Co.*, 91 Vt. 228, 100 A. 34 (1917); *Wolcott* v. *Mongeon*, 88 Vt. 361, 92 A. 457 (1914); 6 Am.Jur.2d *supra* § 483, at 901.

██ We agree that the assignment was not one of "future earnings" under 12 V.S.A. § 3022. While "earnings" should be, and is, broadly defined to cover compensation however denominated, V.R.C.P. 4.2(j)(4)(i), 12 V.S.A. § 3022's scope should be restricted to cover what the assignor himself has earned by virtue of his own personal labor and services. *Cf. Chester* v. *McDonald*, 185 Mass. 54, 69 N.E. 1075, 1076 (1904). It is inappropriate to apply this statute to business operations such as Carter's which undoubtedly was itself an employer and purchaser of labor and services.

However, we are unable to agree with the bank's argument that the assignment did not create a security interest under the Uniform Commercial Code. Its initial belief, when it filed a financing statement with the Secretary of State four days after receiving the assignment, was correct. Its delay in not filing in the Rutland city clerk's office until July 9, 1968, is the crucial cause of the ordering of the priorities by the court below, which we affirm.

The trial court concluded that the assignment "does not come within the purview of the Uniform Commercial Code." Appellee Elnicki argues that it was within the Code's purview, and we cannot understand how the lower court held it to be without. For the court also concluded that Johnson and Elnicki had issued trustee process prior to the bank's recording of "the security agreements" and that the bank had priority over La-Voice "based on the recording of the security agreement and not on the unrecorded assignment . . . ."

The assignment from Carter to the bank was an assignment of accounts and contract rights, 9A V.S.A. § 9—106, which had to be filed to be perfected, 9A V.S.A. § 9—302(1) (e), in both the Secretary of State's Office and in Rutland. 9A V.S.A. § 9—401(1) (c). It cannot be viewed as one of those "casual or isolated assignments" to which the Code was not intended to apply. 9A V.S.A. § 9—302(1) (e), and Uniform Law Comments. Both the professional status of the assignee and Carter's testimony that he had been assigning in this manner to this bank on most of his major contracts for four years precludes such a characterization. Nor was it an assignment "for the purpose of collection only" and thereby without the Code. 9A V.S.A. § 9—104(f).

The record manifests that Carter made this assignment for one reason only; he owed the bank a substantial amount of money on loans that it had made to him. The "value" that must be given for a security interest to attach, 9A V.S.A. § 9—204(1), includes the bank's acquisition of rights to payments due Carter "as security for or in total or partial satisfaction of a preexisting claim . . . ." 9A V.S.A. § 1—201(44) (b).

We are certain that the bank, by its execution and filing of Uniform Commercial Code financing statements, obviously intended to perfect a security interest and suspect that it argued otherwise at trial only because it did not proceed quickly

enough. It contends that its filing was gratuitous giving of notice, unrequired by statute, and that we should examine the intent behind the assignment in light of *Lyon* v. *Ty-Wood Corp.*, 212 Pa. Super. 69, 239 A.2d 819 (1968) and *Spurlin* v. *Sloan*, 368 S.W.2d 314 (Ky. 1963). While the assignment in *Lyon* was between relatives and arguably without the Code under 9A V.S.A. § 9—302(1)(e), *Spurlin* reaches a result opposite to ours here on sufficiently similar facts. *Spurlin*, however, is a misinterpretation of the Code, the product of an approach "egregiously in error", J. White & R. Summers, Uniform Commercial Code, § 23—8, at 806, 807 (1972), and will not be followed here.

*Judgment affirmed.*