In re BRENT EXPLORATIONS,
INC., Debtor.

BRENT EXPLORATIONS, INC., a Colorado corporation, Debtor-in-Possession,
Plaintiff,

v.

KARST ENTERPRISES, INC., a Wyoming corporation, Defendant.

Bankruptcy No. 82 B 05215 J.
Adv. No. 82 C 0050.

United States Bankruptcy Court,
D. Colorado.

June 16, 1983.

Jon B. Clarke, Englewood, Colo., for plaintiff.

Bruce H. DeBoskey, Denver, Colo., for defendant.

## ORDER

PATRICIA A. CLARK, Bankruptcy Judge.

Brent Explorations, Inc., (Brent) the debtor-in-possession, brought suit to avoid a lien in favor of Karst Enterprises, Inc., (Karst) under the "strong arm clause" of 11 U.S.C. § 544(a) and to recover certain payments to Karst as preferential under 11 U.S.C. § 547.

Brent is in the business of exploring for and drilling oil and gas wells. Karst was one of its suppliers of pipe. By December, 1981, Brent had accumulated a debt to Karst in the approximate amount of $471,-500. Because of its inability to obtain payment of its obligation, Karst in December of 1981 filed liens against several of Brent's wells, one of which is known as Brent Federal 32–1 well in Washakie County, Wyoming. As a result of this lien, Phillips Petroleum Company, the purchaser of the production from such well, withheld the payments due Brent pending resolution of the matter between the parties. Subsequently, it was agreed between Brent and Karst that in exchange for a release of its liens Karst would receive the funds withheld by Phillips and an assignment of the proceeds from the Brent Federal 32–1.

On April 23, 1982 Brent executed an assignment in favor of Karst of the proceeds from the Brent Federal 32–1 as security for $414,552.34 owed by Brent to Karst for pipe purchased. The assignment provided that it would be of no further force and effect at such time as the debt due Karst was satisfied. The assignment further provided that Karst would not record the assignment nor would it notify the buyer of the production from the well before June 15, 1982 of the assignment. If Karst breached this agreement, the assignment would be null and void. On June 11, 1982 Karst released its lien on the Brent Federal 32–1 well and the production payments withheld by Phillips in the approximate amount of $192,000 were paid to Karst.

Brent persuaded Karst not to record the assignment after June 15, 1982 on the belief that such action would create a cloud on the title which would cause Phillips to withhold the proceeds from the well to the detriment of both parties. Karst acquiesced and did not record the assignment. Accordingly, the checks from Phillips were sent to Brent since Phillips was unaware of the assignment. Upon receipt of the payment from Phillips, Brent would issue its check in a like amount payable to Karst. Brent continued to send Karst its check for the proceeds from the well until October 4, 1982. On November 5, 1982 Brent filed its petition for reorganization under Chapter 11 of

the Bankruptcy Code. The assignment has never been recorded by Karst.

■ The first issue before the Court is whether Brent can avoid the assignment in favor of Karst under 11 U.S.C. § 544. Section 544 of the Bankruptcy Code provides:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; and

(3) a bona fide purchaser of real property from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists.

Pursuant to this section the trustee is given powers to set aside transfers voidable under state or federal law where the debtor could not do so. In short, the trustee has all the rights and powers conferred by state law on its most favored creditor who has acquired a lien on the debtor's property whether or not such a creditor exists. Accordingly, if a creditor under Wyoming law could take priority over Karst, so can the trustee. Under 11 U.S.C. § 1107 Brent as the debtor-in-possession has all the powers of a trustee. 4 *Collier on Bankruptcy*, ¶ 544.02 (15th ed. 1983).

■ From the evidence presented in this case the Court is unable to determine whether the assignment of proceeds from the well was an interest in real property or personal property. If it were an interest in real property, it had to be recorded in the real property records in Washakie County, Wyoming, to be perfected. It was never so recorded. The assignment of proceeds arose from rights pursuant to a contract. Thus, it is more likely that it was an interest in personal property. As such, a financing statement must have been filed to perfect the security interest. No financing statement was ever filed. Since Karst never perfected its security interest Brent, as debtor-in-possession, has priority over the rights of Karst pursuant to Wyo.Stat. § 34–21–930 (1977).

■ Karst argues that it is exempt from filing pursuant to Wyo.Stat. § 34–21–931 (1977). That section exempts from filing "An assignment of accounts or contract rights which does not alone or in conjunction with other assignments to the same assignee transfer a *significant part* of the outstanding accounts or contract rights of the assignor." (emphasis added) Karst has the burden of proving that the assignment was not a significant part of the outstanding accounts or contract rights. *Craig v. Gudin*, 488 P.2d 316 (Wyo.1971).

It appears that from the time of the assignment to the date of bankruptcy the payments from Phillips on the Brent Federal 32–1 well were averaging approximately $16,000 to $17,000 a month. During this same period of time Brent's income from all sources, including Phillips, was approximately $70,000 to $80,000 per month. Brent's operating expenses during those months were substantially in excess of its revenues. Accordingly, the loss of the income from the Brent Federal 32–1 well had an adverse effect on the ability of Brent to pay its bills.

Courts have attempted to define what is or is not a significant part of the outstanding accounts or contract rights of the assignor. In *General Lithographing Co. v. Sight & Sound Projectors, Inc.*, 128 Ga.App.

304, 196 S.E.2d 479 (1973) it was held that an assignment of a security interest in all of sales accounts, all reserves, funds, moneys, sums or properties in or coming into debtor's hands, all accounts receivable, customer obligations and other choses in action was a significant part of the accounts of the assignor. In *Standard Lumber Co. v. Chamber Frames, Inc.,* 317 F.Supp. 837 (D.C.Ark.1970) it was held that 16 percent of outstanding accounts receivable was not a significant part of the outstanding accounts of the defendant. In the instant case, the funds received under the assignment to Karst constituted approximately 20 percent of Brent's total income. Furthermore, Brent's operating expenses were almost twice its income.

Another factor some courts consider in deciding whether an assignment should be recorded is whether the assignment was a casual and isolated transaction since the legislative history, as revealed by the official comments indicates an intent to protect an insignificant and ignorant assignee. *Sherburne Corp. v. Carter,* 133 Vt. 411, 340 A.2d 82 (1975); *E. Turgeon Constr. Co. v. Elhatton Plumbing & Heating Co.,* 110 R.I. 303, 292 A.2d 230 (1972). From the testimony presented, it is clear that Karst is a large supplier of pipe and has sufficient business acumen to file liens and take other steps for collection of overdue debts. Karst knew it should have recorded the assignment. After discussing the matter with Brent, Karst decided against recording it because of their concern that the proceeds from the well might be withheld by Phillips as they had been when Karst recorded the lien against the well. Karst is not the insignificant and ignorant assignee that Section 34–21–931 was designed to protect. Considering all the circumstances of this case, the Court finds that Karst has failed to establish that the assignment was an insignificant part of the outstanding accounts or contract rights of Brent and recording was necessary to perfect its assignment.

■ Wyo.Stat. § 34–21–904 (1977) provides another exemption from filing. Under this provision an assignment of accounts, contract rights or chattel paper which is for the purpose of collection only does not have to be recorded to be perfected. The purpose of the provision is to remove assignments of a non-commercial nature such as those to a collection agency for the sole purpose of collecting a debt. It does not exclude from filing those transactions that are "financing in nature." *Bramble Transportation, Inc. v. Sam Senter Sales, Inc.,* 294 A.2d 97 (Del.Super.1971), aff'd. 294 A.2d 104 (Del.1972). In this case the assignment itself specifies that it is security for a pre-existing debt owed by Brent for pipe purchased from Karst. Thus the Court finds that by its very terms, the assignment from Brent to Karst was not for the purpose of collection only.

■ Karst next raises the affirmative defense of estoppel and contends that the assignment was not recorded at the urging of the debtor so the debtor is precluded from avoiding the transfer. The defendant has confused Section 544(a) with 544(b). Section 544(b) states:

> (b) The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

Section 544(b) gives the trustee or debtor-in-possession a method of avoidance based upon applicable state or federal law. The powers under 544(b) are in addition to and not in limitation of the powers under Section 544(a). If there exists a creditor who could avoid a transfer of property by the debtor for fraud or any other reason under applicable law, the trustee may do so. However, the trustee has no greater rights than the creditor. If the creditor is estopped or barred from recovery for some other reason, so is the trustee. 4 *Collier on Bankruptcy,* ¶ 544.03 (15th ed. 1983).

However, Brent is utilizing the avoidance power of Section 544(a) and not 544(b). Section 544(a) vests the trustee (or the

debtor-in-possession) with the rights of an ideal creditor, without knowledge or notice. One of the purposes for providing the ideal creditor status is to prevent such defenses as estoppel from being raised against the trustee. *Frye v. Farmers & Merchants Bank of Cape,* 561 S.W.2d 392 (Mo.App. 1978). Thus, since Brent is vested with avoidance powers under 544(a), the defense of estoppel is inapplicable.[1]

■ Lastly, Karst raises a pleading issue. The defendant asserts that the complaint referred to invalidation of the lien and Brent is now trying to invalidate the assignment. Rule 8 of the Federal Rules of Civil Procedure applies to pleadings before this Court. *In re O.P.M. Leasing Services, Inc.,* 21 B.R. 986 (Bkrtcy.N.Y.1982). The purpose of the rule is to permit a simple complaint to give notice of the claim and to prevent errors in draftsmanship from barring justice to litigants. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Mutual Creamery Ins. Co. v. Iowa National Mutual Ins. Co.,* 427 F.2d 504 (8th Cir.1970). The Court finds that the complaint provided sufficient notice of Brent's intention to avoid the transfer of property to Karst under Section 544(a) and Karst was in no way prejudiced by Brent's reference to the avoidance of the lien as opposed to the avoidance of the assignment.

In summation, Karst's security interest was never perfected and the defenses raised by the defendant are inapplicable. Since the debtor-in-possession has the powers of a trustee under 11 U.S.C. § 1107, and since a trustee could avoid the assignment under Section 544(a) Brent, as debtor-in-possession can avoid it.

■ The next issue before the Court is whether Brent can recover payments made to Karst under 11 U.S.C. § 547.

A voidable preference under Section 547(b) consists of any transfer of property of the debtor—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; . . . .

. . . .

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

If any element of Section 547(b) is missing, the preference action must fail. *In re National Buy-Rite, Inc.,* 7 B.R. 407 (Bkrtcy.N. D.Ga.1980).

The payments to Karst that Brent seeks to recover are as follows:

| Date of Check | Amount | Date Bank Honored Check |
|---|---|---|
| August 4, 1982 | $16,940.01 | August 11, 1982 |
| August 20, 1982 | 58.60 | August 30, 1982 |
| August 31, 1982 | 17,078.05 | September 9, 1982 |
| October 4, 1982 | 14,966.69 | October 8, 1982 |

Karst has conceded that the payment of $58.60 is a voidable preference. However, Karst contends that the other three payments were not transfers of the debtor's property but were held in trust by Brent pursuant to the assignment and that Brent only acted as a conduit through which payments were sent. Karst relies mainly on three cases to support its position: *Dannerbeck v. Palmer,* 502 F.2d 686 (9th Cir.1974), *Cumberland Portland Cement Co. v. Reconstruction Finance Corp.,* 140 F.Supp. 739 (E.D.Tenn.1953), and *In re Moskowitz,* 14 B.R. 677 (Bkrtcy.S.D.N.Y.1981). These cases are inapposite. In *Dannerbeck* the Court found not only that the funds in question had been effectively assigned prior

---

1. Even if Brent were proceeding under Section 544(b), the defense of estoppel has not been established. There was nothing to indicate that Brent deceived Karst in any way. When Karst

decided not to record the assignment, it acted in what it deemed to be its own best interest to avoid the withholding of production payments by Phillips.

to bankruptcy but because of the bankrupt's default under the construction contract such funds had never become a part of the bankrupt's estate available to general creditors. In *Cumberland* the court found that the assignments were effective under the laws of Tennessee and the funds were not subject to the bankrupt's attaching creditors. In addition, it was held that the payments were for a contemporaneous consideration and, therefore, were not preferential. In *Moskowitz* the court determined that the assignment divested the debtors of all control over that which was assigned. Further, the agreement between the insurance company and the hospital and the contract between the debtors and the insurance company provided that the insurance proceeds were to be paid directly to the hospital and the debtors were not entitled to be paid directly for expenses incurred during a stay in the hospital.

In the instant case the assignment to Karst was not perfected and, therefore, was not good against attaching creditors. Nor was any effective trust created between the parties that removed the payments as an asset of Brent's estate. In spite of the assignment, Brent was not divested of control over the proceeds. Brent still received the funds from Phillips and could have used them for any purpose it wished rather than forwarding them on to Karst. But for the payments to Karst these funds would have been part of Brent's estate available to general creditors. Accordingly, the payments to Karst were transfers of Brent's property.

Karst admits in its answer it is a creditor of Brent and therefore that element of Section 547 is satisfied. The next element Brent must prove is that the payments were made on account of an antecedent debt. The payments in question were made from August to October of 1982 for previously purchased pipe, the last purchase having been made in February of 1982. Therefore, the payments were clearly for an antecedent debt owed by Brent.

The next element is insolvency of the debtor at the time of the payments. There is a presumption of insolvency under Section 547(f) for the 90 days preceding the bankruptcy case. Furthermore, there was testimony by plaintiff's witnesses that in July of 1982 Brent was about 10 to 11 months late in paying its invoices and its expenses were more than double its income. Testimony also revealed that at best, Brent had $9 million of assets and $30 million of debts at the time of filing and for at least three months preceding the filing. If there had been a liquidation, there would not have been enough assets to satisfy priority claims and lien holders. Not only has Karst not rebutted the presumption of insolvency under Section 547(f) but the testimony at the trial established that Brent was insolvent when the subject payments were made.

Another element Brent must prove is that the payments were made within 90 days before the filing of the petition. Karst contends that the date of the assignment, rather than the date of the payments, constituted the effective date of the transfer. The defendant relies on the definition of transfer in Section 101(40) of the Code to support this position. The defendant's reliance on Section 101(40) is misplaced because Section 547(e)(2) defines transfer for the purposes of Section 547. It states that a transfer is made—

(A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time;

(B) at the time such transfer is perfected, if such transfer is perfected after such 10 days; or

(C) immediately before the date of the filing of the petition, if such transfer is not perfected at the later of—

(i) the commencement of the case; and

(ii) 10 days after such transfer takes effect between the transferor and the transferee.

(3) For the purposes of this section, a transfer is not made until the debtor has acquired rights in the property transferred.

By the terms of the statute, since the assignment was not perfected by Karst, the transfer is deemed to have been made at the commencement of the case and not at the date of the assignment.

As previously held by this Court in *Dale Seyler, Trustee v. Mockleman Broyles Grain Company*, 81 C 0137 (Bankr.Colo.1981) and *In re Balducci Oil Company, Inc.*, 83 C 0506 (Bankr.Colo.1983), the date of the transfer of the payments is the date the bank honors the check in question rather than the date of the check. There being no determinative federal statute on the time of transfer, this Court in *Mockleman* and *Balducci* looked to Colorado law. Under Section 4–3–409, C.R.S.1973, a check is just an order to the bank to pay the sum stated and there is no transfer until it is paid. Section 4–4–213, C.R.S. 1973, provides that an item is paid when the payor bank has posted the item. Under Section 4–4–109, C.R.S.1973, posting is defined as some decision to pay and some recording of the payment. Only when the bank completes the posting process does property leave the debtor's account and a transfer takes place.

Since the bank honored the checks on August 11, August 30, September 9, and October 8, 1982, and the bankruptcy petition was filed November 5, 1982, the transfers occurred within the 90 days preceding the bankruptcy case.

The last element Brent must prove is that the payments enabled Karst to receive more than it would have received out of the bankruptcy estate if the transfers had not been made. Testimony was presented by the plaintiff that as of the date of filing, there would not have been enough money from the liquidation of assets to satisfy priority and secured claims and thus nothing would have been available for unsecured creditors. However, Karst argues that there is a possibility that Brent might realize substantial revenue from a 5 percent royalty interest in some Louisiana property. If so, Karst contends everyone might be paid in full and there would be no preference to Karst.

As of the date of bankruptcy, Brent had a leasehold interest in some Louisiana property. It had drilled two wells on this property, one at a cost of $4.5 million which was dry and another at a cost of $8.2 million. The producing well was only providing 125 barrels per day. Brent was required to perform certain additional development work by the spring of 1983 or forfeit the lease. Because Brent did not have the funds to comply with the conditions of the lease, it entered into an agreement whereby Brent received a 5 percent royalty interest in the property. The cost of developing this property is extremely expensive and the risk of loss very real. If the operator loses interest in the project, there will be no royalty payment to Brent.

The issue of whether the trustee had established that there would not be sufficient assets in the bankruptcy estate to pay other creditors in the same class as the preferred creditor the same amount the preferred creditor received was addressed in *In re Gastaldo*, 13 B.R. 808 (Bkrtcy.N.D. Ohio 1981). In *Gastaldo*, the creditor-defendant in the preference action argued that as long as the case is open it is possible for the trustee to recover additional property which would become an asset of the estate available for distribution to creditors. Because of this possibility, the creditor asserted that a preferential transfer may not have occurred. The Court in *Gastaldo* found that the trustee met her burden of proof by showing that it was highly unlikely that additional funds would come into the estate to pay other creditors in the same class the same percentage of their debts as the preferred creditor received. The Court reasoned that it would be impossible for a trustee to recover any transfer as a preference if the action could be defeated any time the possibility existed of recovering additional property for the estate.

The purpose of the preference action, according to the legislative history, is to facilitate equality of distribution among creditors. H.R.Rep. No. 95–595, 95th Cong., 1st Sess., 178 (1977), U.S.Code Cong. & Admin. News 1978, p. 5787. If a creditor receives more than other creditors in the same class,

it must return the excess so that all may share equally.

In the present case the possibility of a return on the royalty interest and thus more assets for the estate is very speculative. It will be approximately one year before Brent might realize any return, if a return even materializes. The Court finds that it is highly unlikely that enough funds will ever come into the estate which would pay other unsecured creditors approximately 25 percent of their outstanding debts which is the amount Karst received from the debtor by the four payments. If additional assets are ever recovered, Karst would not be prejudiced but would share pro rata in the dividends received along with other unsecured creditors.

Therefore, Karst as an unsecured creditor (having never perfected its security interest) received more than it would have received under a Chapter 7 by the payments made to it within 90 days of bankruptcy. Thus the last element of a preference has been established by Brent.

■ Although not an express element under Section 547, it is necessary that the payments made to the creditor diminish the estate. 4 *Collier on Bankruptcy,* ¶ 547.20 and 547.21 (15th ed. 1983). Karst contends that the payments did not diminish the estate because it was a fully secured creditor. It did have a security agreement with the debtor. But at the filing of the bankruptcy petition the debtor becomes a new entity, the debtor-in-possession with its own rights and duties. *Matter of Pacific Far East Line, Inc.,* 654 F.2d 664 (9th Cir.1981). This second entity has a fiduciary duty to the estate. *Stein v. United Artists Corp.,* 691 F.2d 885 (9th Cir.1982). The security agreement was valid between the debtor and Karst but was not perfected against the debtor-in-possession and as stated the transfer may be avoided pursuant to Section 544. Because of the avoidance under 544, Karst is an unsecured creditor as against the estate. The payments did diminish the estate because Karst as an unsecured creditor received more than it would have under Chapter 7.

Karst raises the defenses available in Section 547(c)(1) and (c)(2). Section 547(c)(1) provides that the trustee may not avoid a transfer "(1) to the extent such transfer was—(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and (B) in fact a substantially contemporaneous exchange; . . . ." The last purchase of pipe from Brent by Karst was in February, 1982. The payments were made from August to October, 1982. There was no contemporaneous exchange and, therefore, that defense fails.

Nor can defendant invoke the defense in Section 547(c)(2). Section 547(c)(2) provides that the trustee may not avoid a transfer:

(2) to the extent such transfer was—

(A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made not later than 45 days after such debt was incurred;

(C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(D) made according to ordinary business terms;

Defendant cannot rely on this section because the payments were not made within 45 days. The last purchase of pipe was in February, 1982, and the payments were made from August to October, 1982.

Brent has met its burden of proof on all the elements in Section 547(b). The defenses raised by the defendant do not apply under the facts as presented. Therefore, the payments may be recovered by Brent.

ORDERED that the assignment dated April 23, 1982 from Brent Explorations, Inc., to Karst Enterprises, Inc., is void.

FURTHER ORDERED that the defendant shall pay over to the debtor-in-possession the sum of $49,043.35 and judgment shall enter for that amount.

FURTHER ORDERED that the parties shall have ten days from the date this Order

becomes final to file a written request for the withdrawal of all exhibits received in evidence, after which time the exhibits will be destroyed by the Deputy Clerk without further order of the Court. Dated: June 16, 1983.