# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 03-6010NE

_____

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| DLC, Ltd., a Nebraska Corporation | * | |
| | * | |
| Debtor | * | |
| | * | |
| Thomas D. Stalnaker, Trustee | * | |
| | * | |
| Plaintiff-Appellee | * | Appeal from the United States |
| | * | Bankruptcy Court for the |
| v. | * | District of Nebraska |
| | * | |
| DLC, Ltd., a Nebraska Corporation; | * | |
| DLC Family Trust, Ltd., | * | |
| a Nebraska Corporation | * | |
| | * | |
| Defendants-Appellants | * | |

_____

Submitted: May 21, 2003
Filed: June 18, 2003 (Corrected July 11, 2003)

_____

Before KRESSEL, Chief Judge, SCHERMER and DREHER, Bankruptcy Judges.

_____

KRESSEL, Chief Judge.

DLC, Ltd. and DLC Family Trust, Ltd. appeal from the order of the bankruptcy court[1] allowing the trustee to avoid certain fraudulent transfers and recover a portion of the transferred property. They also appeal from the bankruptcy court's order allowing fees and expenses to the trustee and his attorneys. We affirm.

**BACKGROUND**

For a number of years, the debtor, DLC, Ltd., operated a farming operation in Tilden, Nebraska. DLC purchased various crop inputs from Central Farmers Cooperative, Nonstock one of which was herbicide for its crops. In August of 1991, Cooperative filed a fertilizer lien with the county clerk of Antelope County. Several fertilizer liens were also filed in Madison and Pierce Counties. In 1991, DLC discovered that Cooperative had over-applied herbicide on its crops during at least the years of 1989, 1990, and 1991. In 1991, DLC experienced a hail storm on one farm, for which Blakely Crop Hail, Inc. provided insurance coverage.

Negotiations were undertaken between DLC and Cooperative for damages. On April 20, 1992, Cooperative filed a lawsuit in the Antelope County District Court of Nebraska against DLC seeking to foreclose certain fertilizer liens in order to recover amounts due to it for goods and services provided to DLC. Cooperative named Fort Calhoun State Bank as a defendant because the bank might assert an interest in the crops covered by Cooperative's liens. DLC filed an answer in which it generally denied the allegations of the complaint and asserted that the bank had lien rights prior to those of Cooperative. It also asserted defenses under the Uniform Commercial Code.

On June 24, 1993, Cooperative filed a motion for partial summary judgment. In an order dated August 26, 1993, the district court granted partial summary

---

[1] The Honorable Timothy J. Mahoney, United States Bankruptcy Judge for the District of Nebraska.

judgment to Cooperative, finding that DLC was indebted to Cooperative on its open account in the sum of $15,841.59 as of March 12, 1992, together with interest. The court also found that the affirmative defenses raised by DLC were conclusions of law and that no facts were alleged in support of the conclusions. On September 2, 1993, DLC filed a motion for a new trial, which was denied on October 12, 1993. This decision was appealed to the Nebraska Court of Appeals. In 1995 the Court of Appeals found there were genuine issues of material fact for trial, reversed the District Court's decision, and remanded the case to the district court for further proceedings.

In July of 1992, DLC filed a lawsuit against Cooperative in the U.S. District Court for the District of Nebraska, alleging that Cooperative violated the Racketeer Influenced and Corrupt Organizations Act by fraudulently inducing DLC to purchase and apply excessive herbicide. The district court dismissed the RICO action, holding that DLC could not prove its case. This decision was affirmed by the Eighth Circuit Court of Appeals in *Demerath Land Co. v. Sparr*, 48 F.3d 353 (8th Cir. 1995).

After its RICO action was dismissed, DLC moved to amend its answer in Cooperative's lawsuit in Antelope County District Court and to file a counterclaim against Cooperative for negligence in over-applying the herbicide. The request was denied. On March 4, 1997, the District Court of Antelope County found for Cooperative based on a Confession of Judgment and Stipulation, and found that Cooperative was entitled to a judgment for $27, 127.22 together with interest thereon at 16% per annum on the unpaid balance from February 28, 1997.[2] Nothing in the judgment addressed the other issues contained in Cooperative's petition concerning its lien rights and priorities. On April 1, 1997 DLC appealed the decision to the

_____

[2] DLC maintains that at no time did Cooperative ever attempt to join Family Trust in the lawsuit, and that with the full knowledge that Family Trust owned the assets of DLC, Cooperative ultimately took and received a judgment against DLC only for its alleged debt.

3

Nebraska Supreme Court. The appeal was summarily dismissed by the Nebraska Supreme Court on April 14, 1999.

In May of 1993, the shareholders of DLC created DLC Family Trust, Ltd., and DLC transferred, among other things, several parcels of real estate to Family Trust. As partial consideration for the transaction, Family Trust executed and delivered to DLC a promissory note in the amount of $84,213. Although, thereafter, DLC and Family Trust filed tax returns reflecting that such transactions took place, and although one or the other of the entities notified various county recording offices as well as an office of the U.S. Department of Agriculture that the transactions took place, no deeds were prepared, delivered, or recorded representing conveyance of the real estate until March 24, 1994.

On November 23, 1994, following the recording of the deeds conveying the real estate, three lawsuits were filed by Fort Calhoun State Bank against DLC, Family Trust and others. Those suits alleged that the real estate conveyances were fraudulent transfers under the Nebraska Uniform Fraudulent Transfer Act. Each of the Fort Calhoun State Bank suits were resolved by settlement. The court entered an Order of Dismissal in each case. No trial was held and no judgments were entered.

On July 5, 1995, DLC, assigned to Family Trust all claims and demands which it had concerning the herbicide damage claim for the years of 1989, 1990, and 1991; the hail insurance claim for the year 1991, and a wrongful replevin or taking of personal property claim. DLC also forgave the $84,213 promissory note. As consideration for the transfer of the claims and the cancellation of the indebtedness, Family Trust agreed to prosecute the three claims. The assignment was also subject to the contingency that "if Trust collects from all claims an accumulated total sum greater than the amount of the note...any accumulated interest on said note...and the total amount of any fees and expenses expended and paid by the Trust in collection

4

efforts, then DLC shall receive from Trust a payment equal to twenty five percent (25%) of such excess proceeds."

In 1995, two tax foreclosure suits were commenced by the County of Madison, Nebraska against Cooperative [3] and Family Trust in Madison County district court. In its answer, Cooperative claimed that the transfer of the property amounted to a voidable transfer under the Uniform Fraudulent Transfer Act, §§ 36-701-36-712. In September of 1995, the taxes were paid and the foreclosure actions dismissed. An order of dismissal with prejudice was entered on September 14, 1995.

In June of 1995, DLC filed suit against Blakely for the hail damage caused to its crops in 1991. DLC filed bankruptcy on September 2, 1997[4], which stayed the proceedings in the Blakely case. In January of 1999, Blakely, joined by DLC and Family Trust, moved for relief from the automatic stay. The bankruptcy court granted this motion and the matter was ultimately resolved between Blakely and Family Trust on May 4, 2000, with Blakely paying Family Trust a net settlement of $26,750.

In December of 1998, the trustee filed a complaint against DLC[5] and Family Trust under 11 U.S.C. § 544(b) to avoid the transfers, the assignments and the promissory note forgiveness as fraudulent under the Nebraska Uniform Fraudulent Transfer Act, §§ 36-701-36-712 and asked that the transfers be recovered under 11 U.S.C. § 550. The trustee also requested that the bankruptcy court declare Family Trust a mere continuation of DLC, that Family Trust be held liable for the debts and

---

[3] Cooperative was named because it had filed a lien against the real estate.

[4] Originally, DLC filed a chapter 7 case, but converted the case to a chapter 11 on December 23, 1997. The bankruptcy court converted the case back to chapter 7 on September 10, 1998, and the appellee was appointed trustee.

[5] Although the trustee named the debtor as a defendant, he sought no relief against the debtor nor was any granted.

obligations of DLC, and that the assets of Family Trust be deemed property of the bankruptcy estate. Finally, the trustee requested $84,213 principal, plus interest on the promissory note. In their answer, DLC and Family Trust raised, among other things, the defense of res judicata. They filed two motions for summary judgment based on this defense.

Their first motion for summary judgment dealt with the effects of res judicata upon Cooperative's debt in the tax foreclosure suit where Cooperative first raised the issue of fraudulent transfers. The bankruptcy court denied the appellants' motion for summary judgment, holding that an order that dismisses a case with prejudice but does not pronounce judgment nor grant or deny relief is not a judgment and therefore cannot be final. The appellants filed a motion for a new trial or rehearing, but the bankruptcy court denied the motion and reiterated its holding that res judicata does not apply to settlements that do not deny or grant any relief.

The appellants filed a second motion for summary judgment. This time, they argued the effects of res judicata on Cooperative's claim because of Cooperative's failure to join Family Trust as a necessary party in their suit to foreclose on the fertilizer liens. The bankruptcy court also denied this motion.

On October 3, 2001, Cooperative, DLC, and Family Trust entered into a settlement agreement that ended their ongoing lawsuits. The debtor then signed and filed a "satisfaction of claim" indicating payment of the claim by the appellants and their subrogation to Cooperative's rights under the claim.

After settlement of the Cooperative claim, the trustee's attorneys filed an application for attorneys fees. The bankruptcy court ruled that the adversary proceeding should move forward before the issue of attorneys fees was addressed. The appellants filed a motion to dismiss, the plaintiff and defendants entered into a Joint Preliminary Pretrial Statement, and a trial was held on February 26, 2002. The

bankruptcy court concluded that because of the significant legal question before the court and the unique posture of the fraudulent conveyance action, the parties should attempt mediation, which proved unsuccessful.

On December 9, 2002, the bankruptcy court rendered its decision and held that the evidence offered in the case was clear and convincing that the assets were transferred with actual intent to hinder, delay, or defraud creditors, and that the transfers were fraudulent under the Nebraska Uniform Fraudulent Transfer Act, Neb.Rev.Stat. §§ 36-701 et. seq. It withheld entering judgment while the trustee and his attorneys resubmitted their applications for fees. Over the objection of the appellants, the bankruptcy court, on February 26, 2003, issued its order approving the requested trustee and attorneys fees and expenses in the total amount of $58,280.25. On the same date it entered judgment in the adversary proceeding allowing the trustee to avoid the fraudulent transfers and recover a portion of the transferred property. On March 6, 2003, the appellants timely filed a Notice of Appeal

Six claims have been filed: (1) Central Farmers Cooperative's claim in the amount of $29,327.05; (2) Central Farmers Cooperative's claim in the amount of $29,327.05; (3) Blakely Crop Hail, Inc.'s claim in the amount of $3,231; (4) U.S. Trustee's claim in the amount of $750; (5) Blakely Crop Hail, Inc.'s claim in the amount of $3,231; and (6) Larry R. Demerath's claim in the amount of $90,670. Claims number two and five are clearly duplicative and the U.S. Trustee is not a creditor.[6]

## JURISDICTION

As we discussed in *Moix-McNutt v. Coop (In re Moix-McNutt)*, 215 B.R. 405, 407 (B.A.P. 8th Cir. 1997), 28 U.S.C. § 158(a)(1) confers jurisdiction on a

---

[6] To be a creditor, with certain exceptions not applicable here, an entity must hold a pre-petition claim. *See* 11 U.S.C. § 101(10)(A).

bankruptcy appellate panel to hear appeals from "final judgments, orders, and decrees," a small list of interlocutory orders and, in its discretion, other interlocutory orders. *Id*. at 408 (citing 28 U.S.C. §§ 158(a)(2) and (3)). Like all courts we have a duty to review our own jurisdiction. *Nieters v. Sevcik (In re Rodriquez)*, 258 F.3d 757, 759 (8th Cir. 2001) (citing *Olin Water Servs. v. Midland Research Labs., Inc.*, 774 F.2d 303, 306 (8th Cir. 1985)).

We note that the trustee's original complaint contained three counts. The bankruptcy court, in the beginning of its opinion acknowledges the three counts, but explicitly discussed and dealt only with the first count. Nevertheless, we believe that the bankruptcy court's judgment was final because it was after a trial on the merits of the entire complaint, and although the bankruptcy court did not explicitly rule on the other two counts, it is clear to us that both of those counts were implicitly denied by the court, abandoned by the parties, or are now moot.

## STANDARD OF REVIEW

We review the bankruptcy court's factual findings for clear error and its conclusions of law de novo. *Blackwell v. Lurie (In re Popkin & Stern)*, 223 F.3d 764, 765 (8th Cir. 2000); *Wendover Fin. Servs. v. Hervey (In re Hervey)*, 252 B.R. 763, 765 (B.A.P. 8th Cir. 2000).

## 11 U.S.C. § 544(b)

11 U.S.C. § 544(b) provides:

> The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

Bankruptcy trustees use section 544(b) as a conduit to assert state law-based fraudulent conveyance actions in bankruptcy. *Williams v. Marlar (In re Marlar)*, 267 F.3d 749, 753 (8th Cir. 2001) (citing *Young v. Paramount Communications, Inc. (In re Wingspread Corp.)*, 178 B.R. 938, 945 (Bankr.S.D.N.Y. 1995). Section 544(b) of the Bankruptcy Code gives the bankruptcy trustee whatever avoiding powers an unsecured creditor with an allowable claim might have under applicable state or federal law. *Id.* at 754; *In re Marlar*, 252 B.R. 743, 753 (B.A.P. 8th Cir. 2000) (quoting *Blackwell v. Lurie (In re Popkin & Stern)*, 223 F.3d 764, 769 n. 11 (8th Cir. 2000)). Here, the applicable state law is the Nebraska enactment of the Uniform Fraudulent Transfer Act.

In order to avail himself of the avoidance powers contained in section 544(b), the trustee must show the existence of an actual unsecured creditor holding an allowable unsecured claim who could avoid the transfer in question under the provisions of the Nebraska Uniform Fraudulent Transfer Act. *See Ries v. Wintz Properties, Inc. (In re Wintz Co.)*, 230 B.R. 848, 859 (B.A.P. 8th Cir. 1999). The trustee bears the burden of proving the existence of a qualified unsecured creditor, and if the creditor is estopped or barred from recovery for some reason, so is the trustee. *In re Marlar*, 252 B.R. at 754 (citing *Brent Explorations, Inc. v. Karst Enter., Inc. (Brent Explorations, Inc.*), 31 B.R. 745, 748 (Bankr.Colo. 1983)). The trustee is subject to any defenses that could be asserted against the unsecured creditor. *Id.* (citing *Belfance v. Bushey (In re Bushey)*, 210 B.R. 95, 100 (B.A.P. 6th Cir. 1997)).

Simply put, it is the trustee's responsibility to: (1) identify an existing creditor; (2) with an allowable claim; (3) who under non-bankruptcy law could avoid the transfer, at least in part. Once the trustee has proven his case, the trustee, pursuant to *Moore v. Bay*, 284 U.S. 4 (1931), as interpreted, may: (4) avoid the entire transfer

(even if the creditor upon whom the trustee relies could avoid it only in part); and (5) if necessary[7], recover the property transferred or its value under 11 U.S.C. § 550(a).

## RES JUDICATA

The appellants state that trustee is barred from bringing the section 544(b) action because he is barred by res judicata due to the previous litigation involving the appellants. Res judicata does not apply to the trustee. As we stated in *In re Marlar*:

> "[T]he trustee in bankruptcy...represents all creditors."...As such, the trustee is not simply the successor in interest to the debtor: he represents the interest of all creditors of the debtor's bankruptcy estate....
> Because the trustee is invested with "extraordinary rights...as a general representative of...creditors," he is "not bound, either on res judicata or judicial collateral estoppel [grounds] by the prior state proceedings."

*In re Marlar*, 252 B.R. at 757 (quoting *Corzin v. Fordu (In re Fordu)*, 201 F.3d 693, 705 (6th Cir. 1999)). Moreover we held that, "[A] person cannot be barred from litigating a claim unless he was a formal party or 'in privity' with a formal party to the first action...[T]he trustee, who was neither a formal party...nor represented by a party...[is not barred] from litigating this claim." *In re Marlar*, 252 B.R. at 757 (quoting *Boyajian v. DeFusco (In re Giorgio)*, 62 B.R. 853, 862-863 (Bankr.D.R.I. 1986)). Thus, we are persuaded by the forgoing principles that the trustee in this case is not barred by res judicata from pursuing the section 544(b) fraudulent transfer action. The trustee was neither a party nor in privity with any pre-petition party. It may be that the creditor's claim is barred by res judicata in which case an element of

---

[7] We say "if necessary" because sometimes, as in the case of the avoidance of the grant of a security interest, avoidance is sufficient.

the trustee's case is missing. This is really the point the appellants are trying to make and we address it later.

## CREDITOR ELIGIBILITY

In order to avail himself of the avoidance powers under 11 U.S.C. § 544(b), the trustee must show the existence of at least one actual unsecured creditor with an allowable unsecured claim who could avoid the transfer in question under the provisions of the Nebraska Uniform Fraudulent Transfer Act. At the time the bankruptcy case was filed, there were three creditors with allowable unsecured claims: Cooperative, Blakely and Demerath. The appellants argue that the trustee failed to prove the existence of a current unsecured creditor for purposes of 11 U.S.C. § 544(b). The appellants concede that two creditors initially qualified as unsecured creditors: Blakely and Cooperative. However, the appellants argue that by the time the case was filed, Cooperative was barred by principles of res judicata from bringing a fraudulent transfer claim. They also argue that the time to determine the existence of a qualifying creditor is at the time of trial, and by that time Cooperative and Blakely were paid and Demerath had withdrawn his claim.

## COOPERATIVE'S CLAIM
## (RES JUDICATA REVISITED)

The appellants argue that the settlement of Cooperative's claim in the lien foreclosure action is equivalent to a final judgment on the merits for purposes of res judicata and thus, under section 544(b), Cooperative could not avoid the fraudulent transfers at issue and thus the trustee cannot use it as an eligible unsecured creditor. The appellants also argue that before concluding its fertilizer lien foreclosure lawsuit on March 4, 1997, Cooperative, who knew Family Trust owned the real estate of DLC, had an obligation to join Family Trust as a necessary party or waive any cause of action against Family Trust. Since Cooperative did not join Family Trust, the appellants reason that Cooperative's claim is barred by res judicata.

Under the traditional rule of res judicata, or claim preclusion, any rights, facts, or matters in issue directly adjudicated or necessarily involved in the determination of an action before a competent court in which a judgment or decree is rendered upon the merits, is conclusively settled by the judgment therein and cannot again be litigated by the parties and privies. *Gruber v. Gruber*, 261 Neb. 914, 918, 626 N.W.2d 582, 585 (2001) (citing *Schuelke v. Wilson*, 255 Neb. 726, 587 N.W.2d 369 (1998)). The doctrine of res judicata rests on the necessity to terminate litigation and on the belief that a person should not be vexed twice for the same cause of action. *Cole v. Clarke,* 10 Neb.App.981, 983, 641 N.W.2d 412, 415 (2002). The doctrine bars relitigation not only of those matters actually litigated, but also of those matters which might have been litigated in an earlier proceeding if (1) the former judgment was rendered by a court of competent jurisdiction; (2) the former judgment was a final judgment; (3) the former judgment was on the merits; and (4) the same parties or their privies were involved in both actions. *Hangman v. Bruening*, 247 Neb. 769, 771-772, 530 N.W.2d 247, 249 (1995) (citing *Wicker v. Vogel*, 246 Neb. 601, 521 N.W.2d 907 (1994); *Smith v. Smith*, 246 Neb. 193, 517 N.W.2d 394 (1994); *Dakota Tile v. World-Wide Steel Sys.*, 238 Neb. 519, 471 N.W.2d 430 (1991). Moreover, res judicata operates to generally bar every question which was or might have been presented and determined in the first action. *In re Marcus*, 11 Neb. App. 313, 323, 649 N.W.2d 899, 909 (2002).

The appellants argue that *Simpson v. City of North Platte*, 215 Neb. 351, 354, 338 N.W.2d 450, 452 (1983), and *Kuskie v. Adams Bank & Trust of Madrid*, 248 Neb. 18, 531 N.W.2d 921 (1995), mandate application of res judicata to Cooperative's claim of fraudulent transfer avoidance, while the trustee cites *J.K. v. Kolbeck*, 257 Neb. 107, 595 N.W.2d 875 (1999), in arguing that it does not.

While the parties argue over whether a dismissal order can have res judicata effect, we do not think that is really the issue. Dismissals sometimes are on the merits

and sometimes are not. However, as the Nebraska Supreme Court has consistently held:

> The doctrine of res judicata is based on the principle that a final judgment on the merits by a court of competent jurisdiction is conclusive upon the parties in any later litigation involving the same cause of action.

*Simpson*, 215 Neb. at 354; *Kuskie*, 248 Neb. at 23. The judgment against the debtor on a contractual debt is in no way the same cause of action as a fraudulent transfer avoidance action against Family Trust.

As to the tax foreclosure actions by Madison County, appellants claim that Cooperative "characterized" the transfers as fraudulent. That is a far cry from asserting a fraudulent transfer avoidance action. In any case, the dismissal of the foreclosure action because it was rendered moot is not the type of judgment "on the merits" entitled to res judicata effect.

The fact that Cooperative did not join Family Trust in its state lawsuit against DLC does not bar future litigation against Family Trust due to res judicata. It is the duty of the plaintiff in a lawsuit to join all persons who have or claim an interest which could be affected by the judgment. *Battle Creek State Bank v. Preusker,* 253 Neb. 502, 511-512, 571 N.W.2d 294, 301 (1997) (citing *Robertson v. School Dist. No. 17*, 252 Neb. 103, 560 N.W.2d 469 (1997)). An indispensable or necessary party to a suit is one who has an interest in the controversy to an extent that such party's absence from the proceeding prevents a court from making a final determination concerning the controversy without affecting such party's interest. *Id*.

The fact that in May of 1993 Family Trust received substantially all of the real estate once owned by DLC, although such transfers were not recorded until March

13

of 1994, did not qualify Family Trust as an indispensable or necessary party in the April 1992 state lawsuit between Cooperative and DLC. The failure of Cooperative to join Family Trust in the state lawsuit did not affect Family Trusts' rights or interests because a *money judgment* was entered in favor of Cooperative against DLC personally on March 4, 1997. No determination of lien priority involving land owned by Family Trust was made or discussed in the March 4, 1997 judgment.

In the previous actions involving Cooperative and the debtor, the court did not grant nor deny relief and did not pronounce a judgment. When one applies applicable precedent, it is evident the bankruptcy court did not err when it held that res judicata did not apply to Cooperative. The trustee took over the rights of this creditor upon the filing of the bankruptcy petition to avoid the fraudulent transfers, and those rights do not change based on the post-petition actions of the transferee.

## BLAKELY'S AND DEMERATH'S CLAIMS

In any case, Blakely and Demerath qualified as eligible unsecured creditors. The appellants do not argue that Blakely or Demerath were barred by principles of res judicata from bringing an avoidance action. Thus, the trustee also took over the rights of these creditors upon the filing of the bankruptcy petition.

## TIMING UNDER SECTIONS 544(b)

Next we address what we think is the appellants' principal argument. They argue that by the time of trial, the claims of Cooperative and Blakely had been satisfied and Demerath's claim had been withdrawn and therefore, there were no eligible creditors and the trustee's case fails. We disagree.

Section 544(b)(1) allows the trustee to avoid transfers of the debtor in property that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502. *See* 11 U.S.C. § 544(b)(1). Section 502(a) allows a claim or interest unless a party in interest objects. Section 502(b) states: "If such an

14

objection to a claim is made, the court...shall determine the amount of such claim in lawful currency of the United States *as of the date of the filing of the petition...*" 11 U.S.C. § 502(b) (emphasis added). The date of the filing of the petition is important because it generally fixes the rights of the estate and other parties in interest. Congress and courts commonly refer to the date of the bankruptcy petition as the "date of cleavage." *See Mickelson v. Detlefsen (In re Detlefsen)*, 610 F.2d 512, 519 (8th Cir. 1979). While there are exceptions, the rights of the debtor and other parties in interest are generally fixed as of that date.

As of the date of the filing of the petition, there were creditors holding unsecured claims that were allowable under section 502, and the transfers were avoidable by those creditors. The existence of such creditors as of the date of the filing of the petition is undisputed. On the date of the filing of the petition in this case, the trustee could have brought an avoidance action under section 544, the recovery from that avoidance would have been property of the estate, and would have been distributed to all of the estate's creditors. It is inconsistent with the Bankruptcy Code to allow a transferee of a fraudulent transfer to defeat the bankruptcy trustee by paying a couple of creditors. The potential for abuse is obvious.

Thus, we hold, as have other courts analyzing this issue, that the trustee must identify a creditor with an allowable unsecured claim who had an allowable claim against the debtor on the date the bankruptcy petition was filed. *Acequia, Inc. v. Clinton (In re Acequia, Inc.)*, 34 F.3d 800, 907 (9th Cir. 1994); *see also Karnes v. McDowell (In re McDowell),* 87 B.R. 554, 558 (Bankr.S.D.Ill. 1988) (stating that the trustee's action against the defendant depends on whether there was a creditor existing at the time the transfers were made that still had a viable claim against the debtor at the time the bankruptcy petition was filed). If the trustee can find such a creditor at the time the petition is filed, the trustee takes over those rights.

We note in passing that we are not satisfied that the appellants' factual assumptions are correct. While the parties assume the Demerath claim has been withdrawn, we find nothing in the record to support that assumption. The so-called "satisfaction of claim" of Cooperative was not signed or filed by Cooperative but by the debtor. It also indicated that the appellants were subrogated to Cooperative's rights. Notably, the claim was *not* withdrawn. Likewise, the settlement with Blakely does not explicitly satisfy Blakely's claim or withdraw it.

Since the trustee has proven the existence of an actual unsecured creditor holding an allowable unsecured claim at the time the bankruptcy petition was filed, and has proven that the transfers are voidable under the Nebraska Uniform Fraudulent Transfer Act, the trustee has met his burden under section 544(b). The appellants do not challenge the bankruptcy court's findings that the transfers were fraudulent.

**RECOVERY**

Once the requirements of section 544(b) have been met, 11 U.S.C. 550(a) states: "To the extent that a transfer is avoided under section...544...of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property." Once the trustee identifies a transfer avoidable by an eligible creditor, is the entire transfer avoidable or may the trustee recover only the amount necessary to satisfy the creditor's claim? The case of *Moore v. Bay*, 284 U.S. 4, 52 S.Ct. 3, 76 L.Ed. 133 (1931) and subsequent cases interpreting *Moore* address this issue.

11 U.S.C. §§ 544(b) and 550(a) of the Code are codifications of the Supreme Court's decision in *Moore v. Bay*, 284 U.S. 4 (1931). In enacting section 544(b), Congress expressly rejected limiting the estate's recovery to the amount of a particular creditor's claims. *Committee. of Unsec. Creditors of Interstate Cigar Co., Inc. v. Interstate Distrib., Inc. (In re Interstate Cigar Corp., Inc.)*, 278 B.R. 8, 18 (Bankr.E.D. N.Y. 2002). As the court in *C.F. Foods, L.P.* stated:

When enacting the Bankruptcy Code of 1978, the Committee Report for section 544(b) stated Congress' intent was to retain the controversial rule of a 1931 U.S. Supreme Court case, *Moore v. Bay...* which held that a trustee could avoid an entire transfer without regard to the size of the claim of the unsecured creditor whose rights and power the trustee was asserting. "In other words, an entire transfer can be set aside even though the creditor's claim is nominal and, moreover, the recovery of the trustee is for the benefit of all creditors including those who had no right to avoid the transfer."

*Liebersohn v. Internal Revenue Serv. (In re C.F. Foods, L.P.),* 265 B.R. 71, 86 (Bankr.E.D.Pa. 2001) (citing 5 Collier on Bankruptcy ¶ 544.09 [5] (1998)). Similarly, the court in *In re Pearson Indus., Inc.* stated that "the language of 550(a) which specifies that a trustee may recover 'for the benefit of the estate' [the property transferred or its value], codifies the rule in *Moore v. Bay*, that a recovery made by the trustee is for the benefit of all unsecured creditors in accordance with the distributive provisions of bankruptcy law and not merely for the benefit of those outside bankruptcy." *Indus. and Mun. Eng'g, Inc. v. McCord Auto Supply, Inc. (In re Pearson Indus., Inc.)*, 178 B.R. 753, 756, n. 4 (Bankr.C.D.Ill. 1995) (citing 4 Collier on Bankruptcy, ¶ 550.02. p. 550-6-550-7, n. 3 (15th ed. 1994)).

"The *Moore* case contains two holdings: (1) that any property recovered by the trustee comes back into the estate for the benefit of all the unsecured creditors, not just those named as plaintiffs; and (2) improper transfers may be avoided in their entirety, regardless of the relationship between the size of the transfer and the amount of the unsecured claims." *Pajaro Dunes Rental Agency, Inc. v. Spitters (In re Pajaro Dunes Rental Agency, Inc.)*, 174 B.R. 557, 595-596 (Bankr.N.D.Cal 1994) (citing

17

*Vadnais Lumber Supply, Inc. v. Byrne (In re Vadnais Lumber Supply, Inc.)*, 100 B.R. 127, 134 (Bankr.D.Mass 1989); Collier ¶ 548.03 at 548-54).

Moreover, the court in *In re Serrato* stated that although state law limits a creditor's recovery in a fraudulent transfer action to the amount necessary to satisfy the creditor's claim, this is not controlling in bankruptcy. *Decker v. Voisenat (In re Serrato)*, 214 B.R. 219, 231 (Bankr.N.D.Cal 1997). The Bankruptcy Code separates the concepts of avoiding a transfer and recovering it from the transferee. *Id.* (citing *In re Acequia, Inc.*, 34 F.3d at 808 (citing H.R. Rep.No. 595, 95th Cong. 1st Sess. 375 (1977)). The *Serrato* court stated that "Although the trustee has demonstrated her right to recover under state law, she must still establish the amount of recovery pursuant to section 550(a) of the Code. *Id.* The court went on to state that the purpose and thrust of section 550 is to restore the debtor's financial condition to the state it would have been had the transfer not occurred. *Id.* (citing *Reiber v. Baker (In re Baker),* 17 B.R. 392, 395 (Bankr.W.D.N.Y. 1982); *Aero-Fastener, Inc. v. Sierracin Corp. (In re Aero-Fastener, Inc.),* 177 B.R. 120, 139 (Bankr.D.Mass. 1994) (and cases cited therein). The *Acequia* court recognized that "[a] transaction that is voidable by a single, actual unsecured creditor [under 544(b)] may be avoided in its entirety, regardless of the size of the creditor's claim. *In re Acequia*, 34 F.3d at 809.

Thus, we are persuaded by the forgoing principles that the trustee may recover the entire fraudulent transfer under section 550(a). In this case, the bankruptcy court allowed the trustee to recover only part of the transfer sufficient to pay administrative expenses. The trustee has not appealed the judgment nor made an issue of the limited recovery.

## BENEFIT OF THE ESTATE

The appellants argue, however, that the avoided transfers may not be recovered at all because the transfers may only be recovered for the benefit of the estate. Whether the estate is benefitted depends on a case by case, fact specific analysis.

*Wellman v. Wellman*, 933 F.2d 215, 218 (4th Cir. 1991). The appellants argue that because there may be no unsecured creditors of the estate, the estate cannot be benefitted.

The appellants seem to treat the estate and its unsecured creditors as synonymous. Such a characterization is incorrect. "Estate" is a statutory term that Congress uses to denote the asset side of the bankruptcy balance sheet. 11 U.S.C. § 541 defines what constitutes property of the estate and what can be credited to the asset account. In virtually every case, recovery of any property benefits the estate. In fact, section 541(a)(3) specifically includes in the estate property recovered under section 550. Creditors are on the opposite side of the balance sheet.

The appellants refer us to *Harstad v. First Am. Bank (In re Harstad)*, 39 F.3d 898 (8th Cir. 1994) for the proposition that benefit to the estate and benefit to creditors are synonymous. However, they misinterpret *Harstad*. In *Harstad*, the Eighth Circuit was addressing the situation in a chapter 11 case after a plan was confirmed, revesting property in the debtors, thereby eliminating the estate. The questions confronting the court was this: "What does it mean to benefit the estate in a situation where there was no estate?" The Eighth Circuit held: "there is no post-confirmation bankruptcy estate here to be benefitted–directly or indirectly. Therefore we agree with the courts below that we must look to see whether the Harstads' action would result in any benefit to creditors." *Harstad*, 39 F.3d at 904.

Since this is a chapter 7 case, the analysis is simple and straightforward. There is an estate, the recovery of the property is added to the estate, and recovery is for the benefit of the estate.

## 11 U.S.C. § 704

The appellants argue that sections 544(b) and 550(a), whose collective purpose is to benefit the estate, must be read in conjunction with section 704(1), which

requires the trustee to collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interest of the parties in interest. While we do not disagree with this premise, we find nothing in section 704 that would override the provisions of sections 544 or 550.

## FEES

The appellants complain that the order allowing attorney fees and trustee's fees violates the so called "American Rule." They argue that the trustee brings his adversary proceeding under Nebraska Uniform Fraudulent Transfer Act in which there is no provision for attorney fees. The appellants further argue that Nebraska follows the American Rule, which states that attorney fees and expenses may be recovered in a civil action only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of such fees.

The American Rule is not really an issue in this case. The bankruptcy court did not award the trustee and his attorneys fees in the adversary proceeding for prevailing. It awarded them their fees and expenses under 11 U.S.C. § 330 which allows the trustee and his attorneys to recover fees and expenses from the estate.

The appellants also challenge the reasonableness of the fees awarded. 11 U.S.C. § 330(a) allows a court to award a trustee or a professional person:

> (1) reasonable compensation for actual, necessary services rendered...based on the nature, extent, and value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title; and
> (2) reimbursement for actual, necessary expenses.

20

11 U.S.C. § 330(a). In calculating the appropriate compensation, the lodestar approach, including the possibility of adjustments in rare and exceptional circumstances, is an appropriate method to use in calculating reasonable compensation under § 330. *Chamberlain v. Kula (In re Kula)*, 213 B.R. 729, 736 (B.A.P. 8th Cir. 1997). The lodestar method is calculated as the number of hours reasonably expended multiplied by a reasonable hourly rate. *Id*. Determinations as to necessity, reasonableness, etc., involve questions of fact. The bankruptcy court's decision to award fees are reviewed for an abuse of discretion. *Grunewaldt v. Mut. Life Ins. Co. (In re Coones Ranch, Inc.)*, 7 F.3d 740, 744 (8th Cir. 1993). Moreover, judges are justified in relying on their own knowledge of customary rates and experience concerning reasonable and proper fees, without the need for independent evidence. *Bachman v. Pelofsky (In re Peterson),* 251 B.R. 359, 365 (B.A.P. 8th Cir. 2000). The appellants do not question the number of hours spent by either the trustee or his attorneys, nor the reasonableness of their rates. Rather, they argue that their efforts did not benefit the estate, in part, based on their earlier argument that there is no estate.

The appellants' argument that the trustee's attorneys services must benefit the estate is an incorrect characterization of the standard. Section 330 contains no requirement that the attorneys' services benefit the estate. Section 330(a)(3)(A) states:

> In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including–
> (A) the time spent on such services;
> (B) the rates charged for such services;
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the

service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3)(A). 11 U.S.C. § 326(a) also contains a monetary limit on the trustee's compensation. Based on these standards and limitations, the bankruptcy court awarded the trustee $64.23 for expenses and $3,461.35 for fees, and the attorneys for the trustee $2,028.67 for expenses and $52,726 for fees.

The bankruptcy court found that the trustee was challenged by the appellants at every turn, causing litigation expenses to explode. The court also found that the trustee and his counsel cannot be blamed for pursuing the litigation even in the face of vociferous opposition from the appellants, because the trustee had a good case, and until late 2001, there were claims to be paid. Although the fee may be somewhat high, the bankruptcy court found that, under the unique circumstances of this case, the legal services were necessary and reasonable, and that the estate was benefitted even if in the end it appears the only persons who will receive compensation is the trustee and counsel. Had the trustee not pursued the litigation, it was unlikely the debtor would have had an incentive to settle with the creditor. Such findings by the bankruptcy court are not clearly erroneous, and the awarding of trustee's fees and attorney fees was not as an abuse of discretion.

## CONCLUSION

Because the bankruptcy court did not err in allowing the trustee to avoid and recover the fraudulent transfers, and did not err in allowing attorney fees for the trustee and his attorneys, we affirm.

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE
PANEL, EIGHTH CIRCUIT.